Good morning. May it please the Court, I am Andrew Bode. I represent the appellant Rebecca Snoeyenbos. We bring to you a First Amendment retaliation case. A deputy sheriff of Spotsylvania County, Virginia stooped to corrupting a fellow officer to retaliate against my client. She secretly promised to buy her colleague lunch if he would write a traffic ticket because of my client's prior Facebook post and citizen complaint. I want to emphasize at the outset how interrelated the questions presented are. We presented both evidentiary questions as well as the jury instructions. And as the Court can see, the rulings as to the jury instructions will shape what evidence would be admissible. So it's important for the Court as it considers the evidentiary rulings to evaluate them in light of the appropriate jury instructions. But turning first to the jury instructions. Counsel, can I ask you sort of a threshold question that has been puzzling me about the underlying cause of action here for, I think it's induced retaliation. So under Neves, there's no First Amendment cause of action for a retaliatory arrest that's based on probable cause. So why would there be a First Amendment cause of action for a retaliatory inducement of an arrest that's based on probable cause? Doesn't that just kind of blow an enormous hole into Neves? No, for a couple of reasons. First of all, the officer that we are suing had no probable cause. If you listen to the recording, she calls up and she says first, is your phone secure? Which means, is anyone overhearing this conversation? She then says, if you give this known boss person a ticket, I will buy you lunch. But there was probable cause for the ticket, right? We all agree on that? There was probable cause for the ticket, but she did not have probable cause. Yeah, but the point of Neves, right, is that we don't really care what's in people's minds subjectively. If there was objective probable cause for the ticket, it can't be the basis of a First Amendment retaliation claim. Another way to answer that question is the fact that the court below ruled that this was a valid claim, and that has not been challenged. I agree. That's why this is just, and I'll ask your colleague about that too, that's why this is just sort of something that is puzzling me, like what to make of this. Yes, but I think that I think it might help me understand, if I better understood the cause of action, I'm not just sort of spinning wheels, I think it might help me better understand the issue about the jury instruction. Sure, I understand that. And perhaps the way to look at this is that it's not the ticket that creates the issue. It's not the ticket that creates the issue. It's the conduct that creates the issue. She ends up saying this in a recording, demonstrate her willingness to corrupt a fellow officer. And then my client sees that through the course of the criminal proceedings, she sees that this woman is willing to corrupt a fellow officer to retaliate against First Amendment, to retaliate against First Amendment activity. And therefore, it's not the ticket that we're here about. It's the chill that arises knowing that an officer is willing to corrupt a fellow officer. But wouldn't you have the same chill if you just knew that the officer who arrested you with probable cause was willing to come after you and keep arresting you with probable cause? I don't think so, because this officer demonstrated through the order of that conversation, she demonstrated that she didn't care about the probable cause. She didn't know that there was probable cause when she made the offer of lunch. She then celebrated when she found out that there was a legitimate basis for the traffic stop, but she'd already made the offer of lunch before she even found out about the legitimate basis for the traffic stop. Thank you. So, we raise objections specifically with regard to the de minimis inconvenience standard that was articulated first in Wicomico County case and most recently in the McClure v. Ports case. And though I count, this was a three sentences within the jury instructions. And I count about 12 issues in this one paragraph, 12 issues that I have concerns with. But there are three takeaways that should resolve the issue for the court. First, we only use the de minimis inconvenience standard to balance legitimate public interests against private interests. This is the lesson of Suarez and McClure. But the defendant's conduct. Counsel, aren't you, I mean, that, I appreciate that you can draw that conclusion from those cases. But that rule, that principle, doesn't necessarily hold true with our other cases on this issue, does it? Yes, I think it does. I think it does if you look at the context of the case. Look at the context of the case. So, for instance, you had the issue came up in Constantine, but it was no bar to appropriate action in Constantine. And that's where we really first developed this de minimis standard. It was in a footnote in the ACLU case from Maryland. It was really developed in Constantine. And the rule you're talking about isn't expressed in Constantine, is it? They mention the standard. Correct. And then they don't, it's no barrier to that case moving forward. But then you have the case of Blankenship and the case of the Baltimore Sun case. Those cases did develop this concept. In the Baltimore Sun case, the court ruled that the government has a legitimate interest about deciding whether to answer a reporter's question. But they didn't, I mean, fair enough, I guess, but they didn't say the government interest dwarfs the private interest, as the footnote in McClure says. It looks to me like what you're doing in our cases is that there is a case-by-case analysis and you look at the actors in every particular case and you apply the de minimis standard. And because some of them may involve what you just said, you're right, a legitimate government interest versus a less compelling private interest, you're drawing a principle that we, doesn't look to me like you've articulated consistently in that cause of action. Well, I think even before the McClure v. Ports case, this principle was articulated in Suarez. And Suarez did a very good job of developing the ideas of these First Amendment issues and how to analyze these retaliation cases. And in Suarez, they pointed that the de minimis normally arises in the employment-employer relationship cases. You can see, as it's developed, the courts have paid particular attention to the de minimis and convenience standard when there's a special relationship between the plaintiff and the defendant, such as an employer-employee relationship, a jailer-jailee relationship, or a student-teacher relationship. But we don't do it in the Blankenship case and we don't do it in the Baltimore Sun case. And that's what my, yeah, I think those things, I think the issues you talk about are there in certain cases, so I'm not suggesting you're being disingenuous in any way, but it just feels like what we've done is go on a case-by-case basis, look at what's going on in each situation given the respective positions, and then apply the de minimis standard, as Constantine says, a person of ordinary or reasonable firmness in their particular situation. And even if we go by the case-by-case evaluation, the critical issues that the court is looking at is discretion of the government official for what they do, do they have proper discretion to do what they do, and is there a legitimate government interest? Can I suggest another way of sort of synthesizing our case law, and I do agree, it seems a bit confusing. But what I understood was going on is that you always have to show, you know, you have to start with these three elements, and one of them is the adverse effect, and that does require that we apply this non-de minimis standard. And then there are some cases where even when you have made that showing, there's almost like a defense that, all right, fine, this was retaliatory, but the government interest was so strong that we're going to not find it actionable. And that's what's going on in McClure. They're saying, this may have been enough to chill a reasonable person, but it doesn't matter because the government interest is so strong. But this isn't that kind of case. The government is not here, I think probably for good reason, saying, oh no, we had such a strong government interest here that this is not actionable. So I just, this just seems to me clearly to be a case where we apply the regular three elements and we ask whether the harm is more than de minimis. I can agree with that position, that because there's no legitimate government interest in this case, this shouldn't have been a jury question, which is ultimately what the court needs. Why is it, if there's, it seems to me it's a First Amendment case. If there's no effect on speech, if there's no chilling effect because the conduct in question has such a de minimis effect, if there's no legitimate interest, I don't know, maybe you have a due process claim or something, but I don't see how there's a First Amendment claim if there's no effect on speech. There was an effect on speech. For instance, Mrs. Snowbox. You're saying it's not de minimis. It did affect speech and, but the problem with this jury instruction is that it was written in a way that even if it affected speech, it would still, could be still ruled de minimis because the court said, disregard hurt feelings and a bruised ego. You have to prove some specified harm, not a specific harm, but some specified harm. I really want to be clear about your argument. So now you're not saying that the de minimis standard doesn't apply. You're saying that you do have to show that there was an actual adverse effect, objectively speaking, and subjective evidence can be relevant to that because it shows what is likely to have an objective chilling effect, and the district court kind of got that part wrong. I have a layered approach. My first argument is that the de minimis inconvenience standard should be a question of law, or at least in this case, it is, since there's no legitimate government interest, the jury should not have been instructed as to the de minimis inconvenience standard. I don't understand this. Say my mail carrier doesn't like my yard sign, and so because of my yard sign, disagrees with my speech, he usually does me the favor when he puts my mail in the box. He separates the catalogs from the regular mail, but this one day he just gives them to me together, and he does it because he didn't like my speech. I don't even notice. You think I have a First Amendment claim. The government has a legitimate interest. No, there's no legitimate interest. He just didn't like my lawn sign. That's why he did it. I bring my claim. I depose him. He's like, that's right. I figured that day you go through your catalogs yourself, lady. And in the ACLU case, they did it because of the conduct. In the Ports case, they did it because of the conduct. It's not simply because of the conduct. The mailman has a discretion about how he organizes the mail when he puts it in your mailbox. It's that discretionary issue, that interest of he's moving through, he has to move through these mailboxes quickly. That's not why he did it. He did it because of my... They did it because of the speech, but they had a legitimate basis, legitimate interest and discretion about how they did it. But regardless, the appropriate standard to address whether or not that would chill your speech is the objective ordinary firmness standard. Then it becomes a question of damages. In this case, damages were bifurcated from liability, and this is a jury instruction as to liability. Therefore, even if it would be difficult to prove damages, we are only here as to the liability jury instructions as to this issue. And your issue about whether or not there would be adequate basis to prove damages then would be addressed through the damages part of the trial. I see that I'm out of time. I'll reserve the rest for my rebuttal. Thank you. Kriner. Good morning, Your Honor. The police of the court, Justin Kriner, here on behalf of Ms. Curtis. Like the court, I had to gather a lot of this case from the record itself as I was not present at the trial. However, in going through the record, what I want to make sure is clear to the court, I know is clear to the court at the outset, is that counsel was asking that we overturn not only a jury verdict in this case, in which there was no post-trial motions, no motion to direct the verdict. We made the only one. But counsel has also cited error on 403 balancing decisions by the trial court. So two of literally the most holy decisions that come up from the district court level are what counsel is asking that we disturb on this basis. Reviewing the instruction, as counsel has argued, de minimis is the law in the Fourth Circuit. Constantine is the law in the Fourth Circuit. We cited in our cases how Constantine got to the decision they did by pulling from the other circuits. And this jury instruction, as we pointed to in our brief, this jury instruction, the language contained therein, came from those cases in which Constantine cited in establishing the de minimis standard for this First Amendment retaliation. Counsel, can I ask you something? One of the points your colleague has suggested is the relevance of whether there's a legitimate government interest here. And it seems as if there's no suggestion yet by you that there is one for the conduct that's challenged. Do we have a case where there is no legitimate government interest whatsoever, kind of like this one, where the de minimis standard has been applied? I believe so, but not necessarily in this circuit. In our brief, we cite Carroll out of the Eighth Circuit, which Constantine later cited, which involved, I would categorize it as literal harassment by a law enforcement officer in that case. If I remember correctly, they bumped into them at the card shop, said one of us is going to have to leave, shaking their fists, like a literal series of harassment in that case out of the Eighth Circuit. But they didn't do a government interest analysis in that case either, so I'll concede that. However, it's not applicable. The government interest analysis comes from McClure because of the status of who the parties were. They've sued Ms. Curtis as a private citizen here. The government is not a party to this action. And so what we have is Ms. Curtis as a private citizen, and as the court alluded to in its questioning, you look at on a fact basis. That's what Suarez told us to do, was to look at this on a fact basis for each individual case, decide who these people are as we do this analysis. Regarding the McClure case, I mean, the citation is to a footnote in that case. If it was intended to be the law that we relied upon, it would have made it into the body of the text. And so what we have here is a case where there doesn't need to be a legitimate government interest. That was a response, as Judge Harris had kind of alluded to. That's a response where, yes, there's retaliation, but there's an interest in the retaliation that overcomes the burden that it puts on the First Amendment. And so I don't think it's applicable. Regarding counsel's point on the jury instruction itself, the court is well aware of the standards regarding jury instructions under BUN. You don't take one instruction by itself. You take all of the instructions as a whole for stating the law. Counsel's not only pointing to a single instruction, but specific, we'll call them amplifier words within that instruction. And as we know from previous rulings, the trial court has the utmost discretion in reading its instructions to the jury. And so there's really no reversible error here. We don't see an issue with the instruction because the instruction was pulled directly from Constantine. We took Constantine and we took the cases that Constantine cited, and that's the language that you find in the instruction there.  Regarding the, like I said, the court's suppression issues for the doctor in this case, they had an expert witness that they wanted to come in and testify to essentially the same facts as the plaintiff. They want a plaintiff's husband to come in and testify to the same facts as the plaintiff. In their brief, they assert that maybe Ms. Snowenbost would have been more believable if there was a witness there parroting what she said. But her testimony, as the trial court ruled, was the best testimony to give on the effect that this had on her, on what her actions were and what she did afterwards. What's your, yeah, Constantine certainly sets forth that we look at this objectively. Yes, sir. And, but it also says that the, it looks at objectively whether the de minimis standard has been met. And, you know, that in and of itself might, you know, support the trial court's decision here. But Constantine also says that the plaintiff's testimony is relevant to that. You know, what's your response that our decision in Constantine that the plaintiff's testimony is relevant, I guess your point here is you got the plaintiff, you don't need the additional testimony? That's correct. The plaintiff's testimony is absolutely relevant under Constantine for sure. And that's who testified in front of the jury. That's what was presented to the jury was the plaintiff's testimony. And it is relevant. So it's an objective standard. But so the standard is not subjectively the actual effect it had on the plaintiff. The standard is an objective one, the ordinary person, ordinary firmness standard. But the plaintiff's subjectivity is relevant. And the jury got to hear that. What about the, can you talk a little bit about the poking the bear comment from six years earlier and what the grounds was for excluding that? Your Honor, the grounds of that were that it was not relevant and not connected to the case. The poking the bear comment was made so far ahead and it was, there was essentially no explanation on what that would mean from six years previously that it also was excluded on a four or three basis is also not relevant to the case in any way. We took it as a vicarious liability that somehow Deputy Curtis would be liable for these statements that she never knew existed made previously by another deputy six years ago that we don't even have any context for what that deputy meant. There was no presentation of that deputy at the trial. And frankly, I don't know how it would apply anyway. I don't think the trial court was wrong under any circumstance in excluding that because how would it apply to the present case except for reaching six years in the past and trying to pull something out? Well, wouldn't it be relevant to the fact that how broad, I mean just allegedly I suppose, how the disdain for her is in terms of there's no temporal limit to their feelings about her in a negative way. Six years ago, don't poke the bear. Now six years later, you get stopped for legitimate reason, articulable reason for the stop. But then the evidence is someone says, hey, listen, I'll buy you a meal if you make sure she gets this ticket. Wouldn't that give context to it's not dwindling at all. As a matter of fact, it to me would support the reason that you might be intimidated after the stop because my goodness, six years later, someone is that concerned to, that's kind of outrageous, isn't it? I mean I can imagine. You're scared enough when you get stopped by a police officer for a legitimate stop. But I can imagine he or she calls it in and someone says, hey, who you got? Hey, lunch is on me if that person makes sure they get that ticket. And six years ago you were told don't poke that bear. Why would that not be relevant to give context to why it's not de minimis? And why I better march my P's and Q's, walk on eggshells, maybe even stop driving perhaps. I don't know how this case was tried, but I've tried cases, but that certainly would be in my argument somewhere in that court about what the impact is. And that's not de minimis. I guess particularly demographics, for example, I don't know whether it might be, but people have different views about what it means to be stopped by a police officer. And to say to another police officer who knows nothing about this stop other than know about you, you don't think that's outrageous and that that six-year comment has context and you keep that out? Respond to my long comment question. Sure. Your Honor, plaintiff probably could have gotten that evidence in if plaintiff could have established a connection between those statements. The department is not the defendant in this case. The defendant in this case is Marsha Curtis. Does that matter? Yes, it does matter because the connection between Stillman's statements and Ms. Curtis. So Ms. Curtis is sued specifically for Ms. Curtis's conduct. She's not sued specifically for the conduct of the department. So other deputies' actions years prior are not relevant in any way to what Ms. Curtis did in this case. There's no connection established there between Stillman and Curtis in any way. There's not even evidence of them in a picture together. Anything like that could have been presented to the court. The court looked at it and said this statement was made vaguely. It was made six years ago. It was made by a deputy who has no other connection to this case other than he had a conversation with plaintiff six years ago. And the court rightfully excluded it because it's not relevant. Your Honor, I believe, and I can't actually see how much time I have, but I believe I'm probably close. I believe I've probably extended my time here. So I will rest on the remainder of the brief. No, no, no. You don't. You have my, I see. Yeah, you have a right there in front of you. You have nine minutes. Oh, I've got plenty of time. Sorry. Okay. Maybe I regret it, but I have to truthfully tell you. You know what? I'm going to keep going then because I'm on a roll at this point. I figured you did. I couldn't allow you to believe that. No, your clock is well done. Go ahead. Perfect. So again, and then what's important about this is that the case made it to a jury. We're not here. We made a motion for a directive verdict. The case made it to a jury. There was no motion for a directive verdict. There was no post-trial motions. And so at that point, it's got to be the standard is plain error under the Colombo case that we affirmed in this case, that if there's not a motion for a directive verdict, then if we're going to overturn a jury verdict, it's got to be plain error. And so we have an incredibly high standard to overturn that verdict. And as I alluded to before, in the Simpson case, when the court is going to make these exclusions, particularly 403 exclusions, they're left in the sound discretion of the trial court, as is their verbiage on their jury instructions. And so we're not only parsing an instruction here. We're parsing words within one paragraph of an instruction and saying that the law didn't make it to the jury. The jury heard their evidence. They just didn't agree with the plaintiff. And at that point, Your Honor, I think that's actually all that I really do have, so I'm going to reserve the rest. I should let you sit down, but I just want to ask you a question. As you say, this case went to the jury. And you're not arguing at this point, right, that this case should not have gone to a jury. I gather that was argued below. It was. Yes, and actually a review of the transcript will show that Judge Novak seemed to lean towards granting that motion but said, as a matter of caution, I'm going to allow this to go to the public and allow this to go to the jury. And quite honestly, I'm grateful that he did because I'd be doing a different analysis before this court on that appeal if he had granted that motion. But, no, we felt it should have been granted at that level, but the court denied our motion, sent it to the jury, and the jury came back with its. Sorry, I meant back at the qualified immunity stage. Oh, yes. Where the argument was there's no such cause of action, and if there is such a cause of action, it's brand new, and we were not on notice. But that's been dropped. Yes, ma'am. Okay. I've never finished early before. I'm not sure what to do, Judges. I know. It's frightening to sit down with the time. Mr. Grider, thank you. Thank you, Your Honors. First of all, I wanted to address the standard of review. It's not a plein air standard of review because we're not challenging the jury's ruling as to the evidence. What we're challenging is the jury instructions that misled the jury, and the jury instructions are evaluated not under a plein air standard but rather under the distinct, the two different layers of analysis where the jury instructions challenged, do the jury instructions correctly state the law? If not, is there a reasonable probability of the error effect of the jury? And secondly, even if they correctly stated the law, did it adequately inform the jury of the controlling legal principles without misleading or confusing the jury? If not, did the instruction seriously prejudice the case of Ms. Snowenbos? So it's not a plein air standard because we challenged the jury instructions, and we quite plainly objected to and challenged them all at every stage of the process. The defense proposed jury instructions. We objected to them, this issue. The court proposed it. We objected to it. The court overruled our objections and insisted on presenting this jury instruction to the jury. Next, looking at the opposing counsel has represented that this jury instruction was pulled from the prior case language. That is not accurate. If you look at the specific words that were used, each of them is a corruption of previous cases. For instance, in the second sentence, there's a reference to specified harm. The closest that seems to be is the Abbott case, where it did not say specified harm. It said a specific incident or a specific ‑‑ I have the language here. Just a moment. It said a specific intended act of expression, not a specified harm. And there's a substantial difference between specified harm and specific intended act of expression. Who specifies the harm? If it's a specified harm, who specifies the harm? Where is that harm specified? What constitutes a harm, especially when the court goes on to say that hurt feelings and a bruised ego are not enough? And then looking at the hurt feelings and a bruised ego, that wasn't taken from case law from this circuit. That was taken from a Second Circuit case in which the court was trying to say, if you are a person who is not deterred in their speech, but suffered defamation by defamation per se, cannot bring a speech claim. A person where you don't even allege that a person of ordinary firmness would be deterred in your speech, you can't bring a First Amendment claim merely because it was defamatory per se, which is also consistent with this circuit case law. So the language of these instructions was a corruption of other circuits or of other case law within this circuit. It was not pulled from Constantine. It was not an accurate characterization of law. It was substantially misleading and confusing. And for that basis, that's one of the basis in which why we need to reverse it. But I think the court is going to be very interested in trying to parse out what this court means going forward with the de minimis and convenience standard. I think that, properly speaking, the instruction that should go to the jury is the ordinary person, the similarly situated person of ordinary firmness. That is the standard by which we know whether this was so small that it should not be in the courts or not. That's the standard by which we use. When we add in there the language of a de minimis and convenience, what that means is even if an ordinary person would be chilled, there are some things so small we're going to disregard the fact that an ordinary person would be chilled in their speech by this conduct. That's what it means to add on the de minimis and convenience standard into the person of ordinary firmness standard. But Constantine kind of did it in the reverse order of that, right? I mean, Constantine lays out the three elements. Then it says, in describing element two, says it can't be de minimis. And then it goes on to describe the person of ordinary firmness. So you're, I mean, you're, maybe you're right. Maybe that would be a better way to do it. Maybe we should go, you know, kind of rewrite some of that. But, you know, A, they're both in there as explaining element two. And B, you're kind of asking for a reversal, at least, of the analysis that was done by a prior panel. I don't think so. Number one is Constantine was decided not on a jury instruction issue but on a 12B6 issue. Therefore, the legal question of de minimis would be an appropriate question to ask at that point. Once it gets to the jury, and the jury would only be instructed as to the de minimis or as to the person of ordinary firmness standard. Can I say, I understand your argument. And if this jury instruction had in fact said, look, you have to prove a specified harm that would likely deter a person of ordinary firmness from exercising his First Amendment rights. But if it's de minimis, it doesn't matter. Even if it would deter someone, it doesn't count. Like that, I think, would be erroneous. But that's not at all what this instruction says. It says it has to be more than de minimis. And then it says that is sort of, in other words, now I'm explaining, it has to be enough that it would deter a person of ordinary firmness from exercising his or her First Amendment rights. So I just don't, the possibility of confusion that you're talking about just doesn't sort of seem to exist with respect to this particular instruction. You can see the issue also arises because of the way the court articulated it. When the court actually read this instruction, he throws a but at the beginning of this paragraph. So he reads the first two paragraphs. And then he says, but it has to be something more than a de minimis inconvenience. So that adds an element of confusion and ambiguity. I just want to, on the closing point, the court did suggest that Constantine allows for the plaintiff's testimony as though it doesn't allow for other testimony. I think if you look at that, the question is not who gets to testify, but what is the subject matter of the testimony? The subject matter of the testimony is the actual harm to the plaintiff is some evidence of. Counsel, if a district court judge says, look, the subject matter is relevant, but the plaintiff is the best person, and I'm not going to put on a lot of sort of superfluous, redundant, kind of one-step removed testimony as to the thing that the plaintiff can best testify to. I mean, you may disagree with that, but, boy, that seems like core district court discretion to me. I don't think it is the district court's discretion to decide which witness gets to testify as to the subject matter. For instance, if my client is a nervous client, if my client is a client who doesn't stutter or stutters or doesn't articulate well to the jury, we may recognize that the jury is not going to find her credible. It is self-serving testimony. It is self-interested testimony, and that itself makes it less credible to the jury. We may choose if we have to put on one witness, we're going to put on her husband. We're going to put on her therapist. If we have to put on one witness, we should still be able to pick which witness we present on that subject matter. It may be the court's core discretion to decide that we get only one witness. But to say she is the one witness that you are going to be able to put on, there are things she cannot talk about. Do you guys say that to the district court? Like, once the district court said, we're not doing the husband, did you say, never mind, we'll keep the plaintiff off and let's go with the husband? The court didn't allow us that. The court ruled, first with respect to the therapist and then with respect to the husband, that they could not present because he ruled specifically that Ms. Snombos was the best avenue, that was his language, the best avenue for this information, and therefore he was not going to allow them to present in the case in chief. I read those orders, but you think the district court, it did not occur to me that the district court had in front of it sort of a request to have someone instead of the plaintiff testify. I thought all the district court was being asked to do was allow all three witnesses, and he said, no, I'm not going to do that. I see I'm over time. Please. That's not actually the way it happened. First what happened is the court decided to bifurcate the trial. And as sui sponte, we raised the issue, well, we have a therapist that's going to be testifying and may have some evidence as to liability. He insisted that we proffer that information. We proffered the information. He then ruled that that witness was not going to be allowed to come in. On what basis? It was he ruled 702 that it was centered around a 403 ruling that she that her testimony was unduly cumulative, which we disagree. She had she had individual knowledge about unduly cumulative to whatever it is that you put on before. And that's the thing is, well, how could it be accused of that? I agree with that question. How can it be cumulative when when he's deciding that we're going to use this witness instead of that witness? But you had also, you know, in your pre-trial disclosures, talked about putting the plaintiff herself up, correct? That was not until later. The ruling as to exclude or can check happened right after the summary judgment motion, well before the pre-trial briefing. Then then what happened is we put on during the witnesses and exhibit list. We identified Mr. Pancheck as a potential witness. The opposing counsel said object. It said we'll stipulate to one piece of his testimony. I said that's not going to be enough because he has other information that is relevant to this question. And the court step in and interpreted their offer of a stipulation as a motion to exclude and then granted his own motion to say, I'm not going to allow a Mr. Snow and boss because you're going to present that testimony through Mrs. Snow and boss. Otherwise, he was the court was holding you to calling her. We could only call her. We could we could see he was only going to allow this testimony to come in through her. He chose our witness. We didn't get to choose our witness on this topic. For those reasons, we ask the court to reverse and remand the decision for further proceedings. Thank you. Thank you. Thank you both. And we can't come down and greet you, but know very well that we appreciate your being here and wish you well. Be safe.
judges: Roger L. Gregory, Pamela A. Harris, A. Marvin Quattlebaum Jr.